**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CANOPY FINANCIAL, INC., | ) | Bankruptcy No. 09-44943 |
| | ) | |
| Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| GUS A. PALOIAN, not individually but solely as Chapter 7 trustee for Canopy Financial, Inc., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12-cv-04646 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| FIFTH THIRD BANK, FIFTH THIRD INVESTMENT COMPANY, and CHARLES DRUCKER, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gus Paloian, as trustee of the bankruptcy estate of Canopy Financial, Inc. ("Canopy"), brought this suit to recover funds from one of Canopy's bankers, Fifth Third Bank ("Fifth Third"), one of its shareholders, Fifth Third Investment Company ("FTIC"), and one of its board members, Charles Drucker, for their alleged roles in a fraud committed against Canopy by two of its officers. The fraud involved the officers' use of a corporate credit card for personal spending sprees. Fifth Third, the issuer of the credit card, also held Canopy's operating accounts and took payment for the outstanding credit card balances from the company's operating funds. Paloian seeks to recover those payments as fraudulent transfers, while the bank contends that the credit card agreement legitimately obliged Canopy to pay the balances and justified the transfers. With the present motion for summary judgment, Paloian seeks a determination that the officers

lacked actual and inherent authority to bind Canopy to the credit card agreement. He also seeks to bar any evidence at trial regarding actual or inherent authority issues. For the reasons detailed below, Paloian's motions are granted.

## BACKGROUND

Canopy was founded by Vikram Kashyap, Jeremy Blackburn, and Anthony Banas in 2004. (Def.'s Resp. to Pl.'s Stmt. of Undisputed Mat. Facts ("PSOF") ¶ 7, Dkt. No. 56.) Canopy developed software that tracked employee health care savings accounts. (Kashyap Decl. ¶ 6, Dkt. No. 56-6.) Kashyap was the company's sole original board member, board chairman, president, chief executive officer, and secretary. (Defs.' Resp. to PSOF ¶¶ 9-10.) In July 2006, Kashyap elected Blackburn as the company's secretary and treasurer, and Banas as its chief technology officer. (Minutes of July 16, 2006 Board of Directors Meeting, Dkt. No. 56-7.) Both Blackburn and Banas were elected to the company's board of directors at that time. (*Id.*)

In December 2006, Canopy sold shares to FTIC, an affiliate of Fifth Third. (Dkt. No. 52-3.) FTIC's ownership interest allowed it to appoint a Canopy board member, and it nominated Drucker. (*Id.*) Although the parties dispute when Drucker actually joined the board, there is no disagreement that as of the FTIC stock purchase, Canopy's board was intended to consist of five members. (*Id.*) Another outside director, John Powers, joined the board in December 2006. (Defs.' Resp. to PSOF ¶ 17.)

In January 2007, Blackburn signed a credit card agreement with Fifth Third Bank. The terms of the agreement gave Fifth Third an interest in all of "Client's now existing and hereafter arising accounts" to secure the payment of debts under the agreement. (Commercial Card Service Terms and Conditions ¶ 4, Dkt. No. 52-14.) Canopy maintained its general operating account at Fifth Third. (Defs.' Resp. to PSOF ¶ 68.) In the signature block space designated for

2

"Client's Legal Name" in the credit card agreement, Blackburn printed his own name; below that space, he added his signature. He wrote "J. Blackburn" on another "Name" line, and "President" on a line for "Title." (Commercial Card Service Company Agreement, Dkt. No. 52-12.) Fifth Third then issued credit cards to Blackburn and Banas.

There is no dispute that Blackburn and Banas used the credit cards for extravagant personal spending. The parties also agree that Fifth Third received payments from Canopy or took debits from its operating account in a total amount of $3,257,076.58 for card charges. (Defs.' Resp. to PSOF ¶ 76.)

Canopy filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, the case was converted to a Chapter 7 proceeding, and Paloian was appointed trustee of Canopy's estate by the bankruptcy court. In the action now before this Court, Paloian seeks to recover the transfers to Fifth Third and to receive damages from Drucker and FTIC for alleged breaches of fiduciary duty to Canopy. The action came to this Court as a result of the grant of Defendants' motion to withdraw the bankruptcy court reference. Fifth Third contends that the credit card account balances were debts properly charged to Canopy and properly paid from the company's funds. Paloian seeks a judgment that Blackburn had no actual or inherent authority to oblige Canopy to pay the credit card charges. Along with that judgment, Paloian asks the Court to bar evidence on those issues at trial.[1]

---

[1] The parties previously presented the actual and inherent authority issues to the bankruptcy court. The bankruptcy court issued an oral ruling discussing the issues before the reference was withdrawn. Before this Court, the parties initially disputed the significance of the bankruptcy court's ruling and, specifically, whether the bankruptcy court issued a final ruling on the issues presented. In open court on October 24, 2013, the parties agreed to clarify matters by briefing a renewed partial summary judgment motion, thus obviating the need for further litigation regarding the impact of the prior ruling.

## DISCUSSION

A district court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *Blue v. Hartford Life & Acc. Ins. Co.,* 698 F.3d 587, 595 (7th Cir. 2012). All facts are construed and all reasonable inferences are drawn in the light most favorable to the non-moving party. *Id.* But in response to a summary judgment motion, the non-moving party must show the evidence it has that would convince a trier of fact to accept its version of events; in the absence of that showing, the non-moving party fails to establish the existence of a genuine issue of material fact. *Koszola v. Bd. of Ed. of City of Chicago,* 385 F.3d 1104, 1111 (7th Cir. 2004).

Paloian contends that Blackburn did not have actual or inherent authority to bind Canopy to the credit card agreement. Fifth Third asserts that the question of the authority granted by Canopy, a Delaware corporation, to Blackburn, its officer, is governed by Delaware law in accordance with the internal affairs doctrine, which submits relationships between a corporation and its officers, directors, and shareholders to the law of the state of incorporation. *LaPlant v. Northwestern Mut. Life Ins. Co.,* 701 F.3d 1137, 1139 (7th Cir. 2012). Paloian has not contested this assertion; his motion will therefore be analyzed under Delaware law.

Express authority to act on behalf of a corporation is usually manifested through a statute, the certificate of incorporation, the by-laws, or a board or shareholder action. *Schoonejongen v. Curtiss-Wright Corp.,* 143 F.3d 120, 127-28 (3d. Cir. 1998) (applying Delaware law). Fifth Third contends that Blackburn was given authority to enter into the credit card agreement on behalf of Canopy by virtue of his appointment as company treasurer and the powers given to that office by the company's bylaws. Section 4.2(f) of Canopy's bylaws describes the duties of the office of treasurer as follows:

> The Treasurer shall keep or cause to be kept the books of account of the corporation in a thorough and proper manner, and shall render statements of the financial affairs of the corporation in such form and as often as required by the Board of Directors or the President. The Treasurer, subject to the order of the Board of Directors, shall have the custody of all funds and securities of the corporation. The Treasurer shall perform all other duties commonly incident to his office and shall perform such other duties and have such other powers as the Board of Directors or the President shall designate from time to time. The President may direct any assistant treasurer to assume and perform the duties of the Treasurer in the absence or disability of the Treasurer, and each assistant treasurer shall perform such other duties and have such other powers as the Board of Directors or the President shall designate from time to time.

(Amended and Restated Bylaws, § 4.2(f), Dkt. No. 56-8.)

Section 4.2(f), while granting Canopy's treasurer custody of the company's funds, makes no explicit mention of the power to incur indebtedness on behalf of the company. But the bylaws are not silent as to that power. Section 5.1(b) provides:

> Unless otherwise specifically determined by the Board of Directors or otherwise required by law, formal contracts of the corporation, promissory notes, deeds of trust, mortgages and other evidences of indebtedness of the corporation, and other corporate instruments or documents requiring the corporate seal, and certificates of shares of stock owned by the corporation, shall be executed, signed or endorsed by the Chairman of the Board (if there be such an officer appointed) or by the President; such documents may also be executed by any Vice-President and by the Secretary or Treasurer or any assistant secretary or assistant treasurer. All other instruments and documents requiring the corporate signature but not requiring the corporate seal may be executed as aforesaid or in such other manner as may be directed by the Board of Directors.

(Amended and Restated Bylaws, § 5.1(b).)

The bylaws thus specifically require that documents demonstrating the company's indebtedness and other formal contracts be executed by the chairman of Canopy's board, its president, or by a combination of a vice president and one of a group consisting of the secretary, the treasurer, or an assistant secretary or treasurer. This requirement precludes any interpretation that the treasurer's authority over Canopy's funds includes the authority to sign a formal contract resulting in the company's indebtedness.

5

This requirement also defeats Fifth Third's claims that Blackburn, as Canopy's treasurer, had implied actual authority or inherent authority to bind the company to the credit card agreement. Implied authority has been described as actual authority implied by the facts and circumstances of the relationship between principal and agent, while inherent authority is a related concept derived from the customary authority of persons in particular positions. *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.,* 125 F.3d 468, 474 (7th Cir. 1997). But under Delaware law, neither concept of authority may be established or exercised in a manner contrary to the explicit authority directives of the company's board or its governing documents. *In re Walt Disney Co. Derivative Litig.,* 907 A.2d 693, 774 & n. 570 (Del. Ch. 2005). In the present case, Canopy's bylaws reserve unilateral approval of contracts for indebtedness to corporate officers other than the treasurer. Accordingly, Blackburn cannot be construed to have been given authority to bind the company to such contracts by the grant of authority in other areas or by the general nature of the authority of the office of treasurer.

Although as noted above, Blackburn signed the credit card agreement with the title "president" and Fifth Third cites evidence that Blackburn "served as" Canopy's president (Blackburn Decl. ¶ 9, Dkt. No. 56-4), the bank does not argue that his authority to bind the company was based upon an actual appointment as its president. Canopy's bylaws provide that officers of the company are to be appointed by the board (Amended and Restated Bylaws, § 4.2(a)) and the bank has conceded that Kashyap was the company's original president. (Defs.' Resp. to PSOF ¶¶ 8-9.) The company's certificate of correction of its third amended and restated certificate of incorporation was filed with the state of Delaware on January 3, 2007 and was executed by Kashyap as the company's president. (Dkt. No. 62-1.) No evidence of a board appointment of any other individual to the office of president has been presented. The Court

concludes that the subjective beliefs of Blackburn and Kashyap regarding Blackburn's claimed service as president would be insufficient to permit a jury to find that he was appointed to the office in view of the board appointment of Kashyap and the absence of any subsequent appointment.

Similarly, Fifth Third's responses to Paloian's statement of undisputed facts repeatedly assert that Canopy's board, through members Blackburn and Banas, authorized the credit card agreement (Defs.' Resp. to PSOF ¶¶ 37-40), but the bank does not incorporate that assertion into its argument in response to Paloian's motion. The bank concedes that John Powers was a member of Canopy's board at the time of the signing of the agreement. (*Id.* at ¶ 17.) Kashyap also remained a member of the board at that time. (Kashyap Decl. ¶ 3, Dkt. No. 56-6.) The company's bylaws required that board action be taken at meetings where a quorum of the board was present, defined as a majority of the exact number of directors, and that such action be determined by a vote of a majority of the directors present. (Amended and Restated Bylaws, §§ 3.6(a), 3.6(b), Dkt. No. 56-8.) Since Canopy's board consisted of four members, no meeting between Blackburn and Banas alone would have been sufficient to constitute a quorum, and therefore no valid vote could have taken place.

## CONCLUSION

For the foregoing reasons, the Court concludes that there is no genuine issue of material fact as to Blackburn's actual or inherent authority to bind Canopy to the credit card agreement. Paloian's motion for summary judgment as to that issue (Dkt. No. 50) is granted, and the Court also grants his motion *in limine* to bar the presentation at trial of any evidence directed to those issues (Dkt. No. 46). As the parties have not contested in these motions the issue of Blackburn's

7

apparent authority to bind Canopy to the agreement, this order is without prejudice to their litigation of that issue.

                                        Entered:

Dated: October 1, 2014

                                        Andrea R. Wood
                                        United States District Judge