**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CANOPY FINANCIAL, INC., | ) | Bankruptcy No. 09-44943 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| GUS A. PALOIAN, not individually but solely as Chapter 7 trustee for Canopy Financial, Inc., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12-cv-04646 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| FIFTH THIRD BANK, FIFTH THIRD INVESTMENT COMPANY, and CHARLES DRUCKER, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gus Paloian, as trustee of the bankruptcy estate of Canopy Financial, Inc. ("Canopy"), has brought this lawsuit to recover funds from one of Canopy's bankers, Fifth Third Bank ("Fifth Third"), one of its shareholders, Fifth Third Investment Company ("FTIC"), and one of its board members, Charles Drucker, (together, "Defendants") for their alleged roles in a fraud committed against Canopy by two of its officers. The fraud involved the officers' use of a corporate credit card for personal spending sprees. Fifth Third, the issuer of the credit card, also held Canopy's operating accounts and took payment for the outstanding credit card balances from the company's operating funds. In this action, Paloian seeks to recover the payments under the U.S. Bankruptcy Code and the Illinois Fraudulent Transfer Act, 740 ILCS 160/5. He also seeks damages for unjust enrichment and breach of fiduciary duty. Now before the Court is

Defendants' motion for summary judgment. (Dkt. No. 67.) For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND FACTS

Canopy was founded by Vikram Kashyap, Jeremy Blackburn, and Anthony Banas in 2004. (Kashyap Decl. ¶ 4, Defs.' Stmt. of Undisputed Facts ("DSOF") Ex. 7, Dkt. No. 67-2 at 94 of 299.) Canopy developed software that tracked employee health care savings accounts. (*Id.* ¶ 6.) Kashyap was the sole member of the company's original Board of Directors, Chairman of the Board, and Chief Executive Officer. (Pl.'s R. 56 Resp. ¶ 8, Dkt. No. 77.) In July 2006, Kashyap elected Blackburn as the company's Secretary and Treasurer, and Banas as its Chief Technology Officer. (*Id.* ¶ 12.) Both Blackburn and Banas were elected to the company's Board of Directors at that time. (*Id.* ¶ 11.)

In December 2006, Canopy sold shares to FTIC, an affiliate of Fifth Third. (*Id.* ¶ 30.) FTIC's ownership interest allowed it to designate a Canopy Board member, and it nominated Drucker. (*Id.* ¶ 31.) Although the parties dispute when Drucker actually joined the Board, there is no disagreement that, as of the FTIC stock purchase, Canopy's Board was intended to consist of five members. (Am. and Restated Bylaws § 3.1, DSOF Ex. 4, Dkt. No. 67-2 at 27 of 299.) Another outside director, John Powers, served on Canopy's Board during Drucker's tenure. (Pl.'s R. 56 Resp. ¶ 34, Dkt. No. 77.)

In January 2007, Blackburn signed a credit card agreement with Fifth Third Bank. (DSOF Ex. 21, Dkt. No. 67-2 at 215 of 299.) The terms of the agreement gave Fifth Third an interest in all of "Client's now existing and hereafter arising accounts" to secure the payment of debts under the agreement. (Terms and Conditions § 4, DSOF Ex. 22, Dkt. No. 67-2 at 217 of 299.) Canopy maintained its general operating account at Fifth Third. (Pl.'s R. 56 Resp. ¶¶ 62,

73, Dkt. No. 77.) In the signature block space designated for "Client's Legal Name" in the credit card agreement, Blackburn printed his own name; below that space, he added his signature. (DSOF Ex. 21, Dkt. No. 67-2 at 215 of 299.) He wrote "J. Blackburn" on another "Name" line, and "President" on a line for "Title." (*Id.*) Fifth Third then issued credit cards to Blackburn and Banas. There is no dispute that Blackburn and Banas used the credit cards for extravagant personal spending. The parties also agree that Fifth Third received payments from Canopy or took debits from its operating account in a total amount of $3,257,076.58 for card charges. (Pl.'s R. 56 Resp. ¶ 73, Dkt. No. 77.)

Canopy filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code. The case was subsequently converted to a Chapter 7 proceeding and Paloian was appointed trustee of Canopy's estate. In the action now before this Court, Paloian seeks to recover the transfers to Fifth Third and to receive damages from the bank for unjust enrichment and from Drucker and FTIC for alleged breach of fiduciary duty. The action came to this Court as a result of the grant of Defendants' motion to withdraw the bankruptcy court reference. For their part, Defendants contend that the credit card account balances were debts properly charged to Canopy and properly paid from the company's funds, and that these facts defeat Paloian's claims to recover the funds and for unjust enrichment damages. Defendants also assert that Drucker breached no fiduciary duty owed to Canopy. Defendants seek summary judgment on nine of the ten claims of Paloian's complaint.[1]

## DISCUSSION

A district court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *Blue*

---

[1] Count 1 of the complaint, a request for disallowance of a $36,389.74 claim by Fifth Third against the estate, is not a subject of the present motion.

*v. Hartford Life & Acc. Ins. Co.,* 698 F.3d 587, 595 (7th Cir. 2012). All facts are construed and all reasonable inferences drawn in the light most favorable to the non-moving party. *Id.* But in response to a summary judgment motion, the non-moving party must show the evidence it has that would convince a trier of fact to accept its version of events; in the absence of such a showing, the non-moving party fails to establish the existence of a genuine issue of material fact. *Koszola v. Bd. of Ed. of City of Chicago,* 385 F.3d 1104, 1111 (7th Cir. 2004).

I. **Fraudulent Transfer Claims**

Five counts of Paloian's complaint seek to recover payments or transfers to Fifth Third from Canopy as fraudulent transfers under the U.S. Bankruptcy Code, 11 U.S.C. §§ 548(a)(1)(A) and 548(a)(1)(B), and its state statutory analogue, the Illinois Fraudulent Transfer Act, 740 ILCS 160/5. Defendants' motion first addresses Paloian's claims in Counts 4, 5, and 6 of the complaint, which allege constructive fraudulent transfers—*i.e.*, transfers that may be avoided by the estate without regard for the transferee's intent in part because the debtor did not receive reasonably equivalent value in exchange for the transfers. Defendants assert that the company received value in the form of satisfaction of its credit card debt. Paloian contends in response that the debt belonged to Blackburn and Banas, that Canopy was not obliged to pay it, and that satisfaction of the debt therefore did not benefit the company. Thus, the parties dispute whether the actions of Blackburn and Banas were sufficient to obligate Canopy to pay the card debt.

In an earlier motion for partial summary judgment (Dkt. No. 50), Paloian sought a determination that Defendants had insufficient evidence to present to the jury their theory that Blackburn and Banas had actual or inherent authority to bind Canopy to the credit card agreement. The Court granted Paloian's motion (Dkt. No. 96) and adheres to its ruling on those issues here. Now, however, Defendants raise the related issue explicitly left unresolved by

4

Paloian's motion and its disposition: whether Blackburn possessed the apparent authority to bind Canopy to the agreement.

Apparent authority to bind a principal exists where the principal, through words or conduct, creates a reasonable impression that the agent has been granted the authority to perform certain acts. *Wells Fargo Business Credit v. Hindman,* 734 F.3d 657, 668 (7th Cir. 2013) (interpreting Illinois law). When the principal is a corporation—and legally able to act only through persons—other parties may consider the actions of a corporate officer to be binding on the corporation when it is reasonable to do so. *Zahl v. Krupa,* 850 N.E.2d 304, 312 (Ill. App. Ct. 2006). Whether a person has apparent authority to bind a principal is a question of fact properly reserved for the factfinder unless the relationship is so clear as to be undisputed. *Petrovich v. Share Health Plan of Ill., Inc.,* 719 N.E.2d 756, 766 (Ill. 1999); *see also Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.,* 125 F.3d 468, 474 (7th Cir. 1997).

The parties dispute whether Blackburn actually held the position of Canopy's President and whether anyone at Fifth Third was told that he had that position. But apparent authority to act on behalf of a corporation may extend to officers below the rank of President. *See Corn Belt Bank v. Lincoln Sav. and Loan Ass'n.,* 456 N.E.2d 150, 154-55 (Ill. App. Ct. 1983) (executive vice president and vice president both had apparent authority). Defendants have presented evidence that Canopy's bylaws established the company's Secretary as a corporate officer and that Blackburn was duly appointed to that position by its board. (DSOF Ex. 3 at 1, Dkt. No. 67-2 at 24 of 299; Ex. 4 at 13, Dkt. No. 67-2 at 27 of 299.) Defendants have also presented evidence that the bank employee responsible for supervising the credit card arrangement was aware that Blackburn was Canopy's Chief Financial Officer. (DSOF Ex. 19 at 22, Dkt. No. 67-2 at 199 of 299.)

The evidence presented by Defendants does not place the question of Blackburn's apparent authority beyond dispute, however. A party seeking to rely on another's apparent authority must have exercised reasonable diligence in determining whether the purported agent is acting within the scope of his powers. *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.,* 376 F.3d 664, 673-74 (7th Cir. 2004); *Gondeck v. A Clear Title and Escrow Exch., LLC,* 47 F. Supp. 3d 729, 740 (N.D. Ill. 2014). Paloian asserts that despite Blackburn's apparent attempts to sign the credit card agreement documents as Canopy's President, Fifth Third possessed corporate documents establishing that the title was held by Kashyap. (Pl.'s R. 56 Stmt. of Add. Facts ¶¶ 56-57, Dkt. No. 77.) Paloian also notes that although the bank required a corporate resolution for approval of the opening of the credit card account, its employees took no steps to confirm the validity of the resolution or the extent of Blackburn's authority. (*Id.* ¶¶ 58-59.) Thus, the record includes evidence Blackburn held a position that Fifth Third could have reasonably assumed to give him the authority to sign the agreement, but it also includes evidence that the bank was aware of inconsistencies regarding that position that may have reasonably called for additional inquiry that it did not make. The resolution of these conflicting inferences is a matter for the jury.

In further support of their argument that the credit card debt was Canopy's obligation, Defendants contend that the company ratified the card agreement by its silence after finding out that the account had been opened. A party may be found to have ratified an unauthorized act by acquiescence if, after hearing of the act, it remains silent under circumstances that would give rise to a duty to repudiate the act. *Forkin v. Cole,* 548 N.E.2d 795, 807 (Ill. App. Ct. 1989). In this case, Defendants assert that Canopy was aware of the account as the result of Kashyap's knowledge and that of the company's Chief Administrative Officer, J.R. Ingram.

Defendants cite the declaration of Banas in support of this assertion. That declaration states that, "Kashyap and other Canopy employees knew about the commercial card account, and were aware that it was paid from a Canopy account at Fifth Third." (Banas Decl. ¶ 9, DSOF Ex. 10, Dkt. No. 67-2 at 135 of 299.) However, the declaration does not specify how Banas would be competent to testify regarding the knowledge of other Canopy officers or employees. A declaration offered in support of a summary judgment motion must be admissible as evidence and must show that the declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4); *Luster v. Ill. Dept. of Corr.,* 652 F.3d 726, 731 n.2 (7th Cir. 2011). The Banas declaration fails to meet that standard and is insufficient to establish the company's knowledge as a basis for ratification of the credit card account.

Defendants also point out that when Kashyap was asked during his deposition whether he knew about the credit card account, he asserted his Fifth Amendment right against self-incrimination. They argue that this act permits an adverse inference that he did know about the account. In civil cases, unlike criminal cases, factfinders are permitted to draw adverse inferences from a party's invocation of his or her Fifth Amendment right to avoid testimony. *SEC v. Lyttle*, 538 F.3d 601, 604 (7th Cir. 2008); *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). "[S]uch adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer." *Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1264 (9th Cir. 2000) (citing *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 391 (7th Cir. 1995)). In *Seguban,* the Seventh Circuit explained that "[t]reating [the nonmovants'] silence as a separate piece of evidence supporting [the movant's] motion for summary judgment and drawing inferences against the [nonmovants] on the basis of that fact seems to be in tension with the ordinary summary judgment rule that all reasonable inferences must be drawn in favor of the

7

movant." 54 F.3d at 391 n.7. Here, Defendants offer no evidence other than Kashyap's invocation of the privilege to show that he knew about the account. His failure to answer, standing alone, is insufficient to permit a conclusion at this stage that he knew of the credit card account under circumstances that should have prompted him to dispute its propriety. *See Logan v. City of Chicago,* 891 F. Supp. 2d 897, 900-01 (N.D. Ill. 2012).

To establish the knowledge of Chief Administrative Officer Ingram, Defendants cite e-mail messages beginning in March 2009 between Ingram and Fifth Third asking that a positive balance on a credit card account be transferred to the Canopy operating account. (DSOF Ex. 35, Dkt. No. 67-2 at 296 of 299.) However, nothing in the content of the messages indicates Ingram's knowledge of any details of the account other than its number and its credit balance. The messages are also silent as to when he became aware of those details. As such, there is insufficient proof for a jury to find that Ingram became aware of the card account and its unauthorized nature in circumstances that would have obligated him to object to its existence.

For the foregoing reasons, the Court concludes that disputed issues of material fact preclude a finding that Blackburn was authorized to bind Canopy to the credit card agreement. Defendants are not entitled to a determination at this stage that, as a matter of law, the transfers from Canopy to pay the card balances were in satisfaction of the company's debts and were exchanges for reasonably equivalent value. Therefore, Defendants' motion for summary judgment is denied as to Counts 4, 5, and 6.

Defendants employ the same debt satisfaction argument in support of their motion for summary judgment on Counts 2 and 3 of the complaint, which allege that the transfers were made with the specific intent to hinder the recovery of other creditors. Defendants contend that the allegations of fraudulent intent are defeated by the validity of the transfers as payment for

Canopy's debt. The same analysis as in the context of the constructive fraudulent transfer claims applies with equal force here: disputed issues of material fact preclude a finding as a matter of law that Blackburn's actions bound Canopy to the credit card agreement, that the transfers to the bank were payments that satisfied company debt, or that the transfers were exchanges for equivalent value. Defendants' motion is denied as to Counts 2 and 3.

## II.    *In Pari Delicto* Defense

Defendants argue that the defense of *in pari delicto* bars Counts 7 through 12 of Paloian's complaint. The *in pari delicto* defense bars a plaintiff's recovery when the plaintiff is as culpable for its alleged loss as the defendant. *Peterson v. McGladrey & Pullen, LLP,* 676 F.3d 594, 596 (7th Cir. 2012). Defendants contend that, to the extent Paloian blames Drucker or Fifth Third personnel for failing to discover and stop the Blackburn-Banas fraud, Canopy's other directors and officers were at least as culpable. As noted above, however, what Kashyap or Ingram knew about the credit card account remains a disputed issue of material fact. And the record is no more conclusive as to the culpable knowledge of any other Canopy director, officer, or employee. Assessing the relative culpability of Drucker and Fifth Third, as compared to Canopy's other agents, is a factual determination not properly made by the Court on the current record. Since the *in pari delicto* defense depends upon resolution of these issues, the Court rejects Defendants' invocation of that doctrine as a basis for summary judgment on Counts 7 through 12 and proceeds to address Fifth Third's claim-specific arguments on those counts.

## III.    Unjust Enrichment Claim

Count 7 of the complaint asserts a claim for unjust enrichment under Illinois law. With this count, Paloian alleges that in receiving the transfers from Canopy's account, Fifth Third took benefits to which it was not equitably entitled.

9

Unjust enrichment is an equitable doctrine that may be applied only when there is no adequate remedy at law. *Guinn v. Hoskins Chevrolet,* 836 N.E.2d 681, 704 (Ill. App. Ct. 2005). When there is a specific contract that governs the relationship between the parties, the doctrine has no application. *Id.* Defendants seek summary judgment on this claim, again on the basis that the credit card agreement was a valid contract that governed the relationship between the bank and Canopy, thereby barring any unjust enrichment remedy. Because it cannot be determined at this stage of this action that Canopy was a party to the credit card agreement, Defendants are not entitled to a judgment that the agreement governed the relationship between the parties.

Defendants also argue that they are entitled to summary judgment on the unjust enrichment claim because the doctrine applies when the defendant has "unjustly retained a benefit to the plaintiff's detriment," *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989), and, in this case, rather than retaining the amounts it transferred from Canopy, Fifth Third reimbursed merchants for the credit card charges made by Blackburn and Banas. Defendants cite no authority for the proposition that application of the doctrine is dependent upon the nature of a defendant's ultimate use of the improperly acquired funds rather than the fact that the defendant unjustly deprived the plaintiff of their benefit. In the absence of authority for this premise, the Court is unpersuaded by Defendants' argument. Their motion for summary judgment is denied as to Count 7 of the complaint.

## IV. Claimed Breaches of Fiduciary Duty

### A. Lack of Oversight

In the complaint, Paloian alleges that Drucker breached his fiduciary duties of care, good faith, and loyalty to Canopy. He references several examples of Drucker's lack of appropriate oversight as a Canopy director. Under Delaware law,[2] a director breaches his duties of loyalty and good faith to his company by intentional dereliction of duty, conscious disregard of responsibilities, or failure to act in the face of a known duty to act. *Westmoreland Cnty. Emp. Ret. Sys. v. Parkinson,* 727 F.3d 719, 726 (7th Cir. 2013). Failure to exercise oversight may result in director liability, but that failure must be "sustained or systematic." *In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 971 (Del. Ch. 1996). Courts defining the nature of such liability have observed that directors are not generally required to supervise decisions other than "the most significant corporate acts or transactions: mergers, changes in capital structure, fundamental changes in business, appointment and compensation of the CEO, etc." *Id.* at 968. A claim against a director for failure to supervise company activities properly has consequently been described as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id* at 967.

Paloian alleges that Drucker served on Canopy's board for almost exactly one year. He claims that Drucker failed to ensure that the company had sufficient internal controls to prevent the frauds perpetrated by Blackburn and Banas. He also claims that an agreement between Canopy's investors required the company to hold eight Board meetings per year, that the company only held one such meeting during Drucker's tenure on the Board, and that he did

---

[2] The parties have previously relied upon the internal affairs doctrine, which submits relationships between a corporation and its officers, directors, and shareholders to the law of the state of incorporation. *See LaPlant v. Northwestern Mut. Life Ins. Co.,* 701 F.3d 1137, 1139 (7th Cir. 2012). While they have not explicitly invoked the doctrine in their pleadings on the present motion, they again cite Delaware law, the state of Canopy's incorporation, as authority for their positions on fiduciary obligations to the company.

11

nothing to ensure the company's compliance with its contractual obligation. Paloian further asserts that the investors' rights agreement obligated Canopy to deliver to its major shareholders audited financial statements on an annual basis. Drucker did nothing to ensure the company's fulfillment of this obligation and that the company never complied. According to Paloian, Canopy's vendor contracts with Fifth Third required the company to become compliant with payment card industry standards that governed card security matters such as system firewalls and customer data encryption. Canopy did not comply with those standards and Drucker did nothing to remedy the failure. Paloian also alleges that Drucker failed to review company financial statements that were presented to the company that purchased FTIC's interest in Canopy.

Courts have recognized the possibility of director liability for failure to monitor based upon combinations of significant unchecked malfeasance and lengthy director neglect. For example, in *In re Veeco Instruments, Inc. Sec. Litig.,* 434 F. Supp. 2d 267 (S.D.N.Y. 2006), such a possibility was recognized when, seven months after an employee reported "flagrant, systematic and repeated violations of export control laws" by shipments of restricted items worth $15 million, the company had allegedly done nothing to stop the illegal activity. *Id.* at 277-78. In *In re SFBC International Inc. Securities & Derivative Litigation,* 495 F. Supp. 2d 477 (D.N.J. 2007), the subject corporation allegedly ran clinical pharmaceutical trials on human subjects for more than two years under conditions that threatened the lives of the participants and triggered repeated warnings from federal and local authorities about violations of applicable regulations. *Id.* at 485-86. And in *In re Abbott Laboratories Derivative Shareholders Litigation,* 325 F.3d 795 (7th Cir. 2003), the company was inspected for federal regulatory compliance thirteen times over a six-year period, given official written warnings for noncompliance four times during that period, and ultimately fined $100 million for the violation. *Id.* at 799-801.

Although the fraud committed by Blackburn and Banas was clearly significant to Canopy, Paloian has not presented evidence that its seriousness was demonstrated to Drucker on any sustained or systematic basis. The other corporate failures alleged by Paloian to be red flags that should have been identified by Drucker were of no greater magnitude or frequency. The Court concludes that Paloian has presented insufficient evidence that Drucker breached his fiduciary duties by failing to oversee properly Canopy's activities to prevail on summary judgment.

## B. Conflict of Interest

Paloian also claims that Drucker violated his duty of loyalty to Canopy in his last act on the company's board. In December 2007, FTIC sold its entire interest in Canopy, held in Series B preferred stock, to Global Granite Ventures III L.P. and GGV III Entrepreneurs Fund L.P. (together, "GGV"). Canopy then issued Series C preferred stock to GGV. This transaction was approved by Canopy's Board, including Drucker. Although the allegation does not appear in Paloian's complaint, in response to Defendants' summary judgment motion, he argues that Drucker's approval of the transaction breached his duty of loyalty to Canopy because he had a conflict of interest.

No such conflict is readily apparent. Paloian argues that Drucker had a conflict because he, FTIC, and Fifth Third had a financial interest in the sale of FTIC's stock to GGV. But a shareholder's profit from a transaction does not by itself create a conflict of interest. "Stockholders in Delaware corporations have a right to control and vote their shares in their own interest. They are limited only by any fiduciary duty owed to other stockholders. It is not objectionable that their motives may be for personal profit, or determined by whim or caprice, so

long as they violate no duty owed other shareholders." *Bershad v. Curtiss-Wright Corp.,* 535 A.2d 840, 845 (Del. 1987).

Paloian argues that Drucker breached an obligation to be informed about the transaction. Delaware law does recognize a director's duty to be informed about transactions that affect the interests of minority shareholders. *McMullin v. Beran*, 765 A.2d 910, 920 (Del. 2000). The acknowledged purpose of the imposition of this duty is to ensure that all shareholders in a company-wide transaction receive the benefit of a director's diligence in pursuing the best value for their shares. *Id.* at 918. However, Paloian cites no authority for the premise that a director breaches a duty of loyalty to his company or to non-selling shareholders by insufficiently informing himself regarding the details of a sale when he or his principal is the seller.

Paloian next contends that Drucker failed to inform Canopy's other board members of details of the transaction. To the extent Drucker could be considered to have had an interest in the transaction, his obligation to his fellow directors was to disclose that interest. *Benihana of Tokyo, Inc. v. Benihana, Inc.,* 891 A.2d 150, 180-81 (Del. Ch. 2005). The interest at issue derived from Drucker's employment by Fifth Third and FTIC, and his presence on Canopy's board was openly and explicitly produced by that employment. Nothing in the record suggests that Drucker's employment by Fifth Third was unknown to any of the Canopy directors.

In sum, the Court concludes that Paloian has not produced evidence of disputed material facts sufficient to defeat Defendants' motion for summary judgment on the claims against Drucker for breach of fiduciary duty. This finding dictates an identical disposition of Paloian's related claim that Fifth Third and FTIC aided and abetted Drucker's breaches of fiduciary duty. *See In re KKR Fin. Holdings LLC S'holder Litig.,* 101 A.3d 980, 1003 (Del. Ch. 2014). Thus,

Fifth Third, Drucker, and FTIC are entitled to summary judgment on Counts 8, 9, and 10 of the complaint.

V.  **Claim For Aiding and Abetting the Blackburn-Banas Fiduciary Breaches**

A third party may be liable under Delaware law for aiding and abetting a breach of a corporate fiduciary's duties. *Malpiede v. Townson,* 780 A.2d 1075, 1096 (Del. 2001). To incur liability, the third party must knowingly participate in the fiduciary's breach. *CDX Liquidating Trust v. Venrock Assocs.,* 640 F.3d 209, 220 (7th Cir. 2011). In this case, Paloian alleges that Fifth Third aided and abetted Blackburn and Banas in their breaches of fiduciary duties to Canopy. In support of this allegation, he details multiple cash advances received by Blackburn and Banas, exorbitant bills from restaurants and clubs in Las Vegas, bank actions to increase the limit on the credit cards, and bank awareness of repeated overdrafts on the credit card account.

Paloian characterizes these facts as "red flags" and "indicia of suspicious activity." (Pl.'s Resp. at 45 n.30, Dkt. No. 76.) Indeed, the evidence he cites raises an inference that Blackburn and Banas engaged in activity that Fifth Third should have investigated. But analysis of claims of aiding and abetting fraud and breach of fiduciary duty has consistently distinguished actual knowledge and participation from the "should have known" state of mind, and has just as consistently held that the latter mindset is not actionable. *Capitaliza-T, Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware,* No. 10-520-RGA, 2012 WL 3150386, at *1 (D. Del. Aug. 2, 2012) ("should have known" is not the actual knowledge required for liability for aiding and abetting fiduciary breaches); *El Camino Res., LTD. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 906 (W.D. Mich. 2010) ("know does not encompass constructive knowledge, that 'one should have known'"). Paloian identifies no Fifth Third agent or group of agents who individually or collectively could be found, on the basis of

15

the facts presented, to have knowingly aided the improper activity of Blackburn and Banas. Summary judgement on Count 11 of the complaint is therefore appropriate.

## VI.     Illinois Fiduciary Obligations Act Claim

The final count of Paloian's complaint asserts a claim under the Illinois Fiduciary Obligations Act, 760 ILCS 65/0.01. That statute has been interpreted to allow a plaintiff to recover from a bank amounts lost as a result of a fiduciary's misappropriation if the bank had actual knowledge of the misappropriation or knowledge of sufficient facts that its actions in paying the funds amounted to bad faith. *Cont'l Cas. Co. v. Am. Nat. Bank and Trust Co. of Chicago,* 896 N.E.2d 340, 348 (Ill. App. Ct. 2008). As noted above, Paloian has not produced sufficient evidence from which a jury could find that Fifth Third had actual knowledge of the Blackburn's and Banas's misdeeds. However, the statute offers an alternative path to recovery: bad faith by the bank. A bank may be liable under the statute if it suspects that the fiduciary is acting improperly and deliberately refrains from investigating to avoid confirming its suspicion. *Cnty. of Macon v. Edgcomb,* 654 N.E.2d 598, 601 (Ill. App. Ct. 1995). The evidence of the card account activity and Fifth Third's reaction to it, while not sufficient to permit a finding that anyone at the bank knowingly aided a fraud, could be enough to allow a jury to find that the bank consciously turned a blind eye. Defendants' motion is denied as to Count 12 of the complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 67) is denied as to Counts 2, 3, 4, 5, 6, 7, and 12, and granted as to Counts 8, 9, 10, and 11.

ENTERED:

Dated: June 2, 2015

Andrea R. Wood
United States District Judge